# Staunton.

FUGATE V. MOORE AND ALS.

SEPTEMBER 17th, 1890.

1. FOREIGN EXECUTORS—*Assets here—Jurisdiction.*—Where a foreign executor comes into this state, bringing assets, he may be sued here; but otherwise he cannot sue or be sued here under the authority of a foreign court of probate.

2. CHANCERY PRACTICE—*Demurrer.*—Where the principles of a cause have been adjudicated, the court is presumed to have overruled the demurrer to the bill, though the same appears not of record. *Matthews* v. *Jenkins,* 80 Va., 463.

Argued at Wytheville. Decided at Staunton.

Appeal from decree of circuit court of Lee county rendered June 21, 1887, in a suit wherein Nathan H. Moore and others were complainants and the appellant, Peter P. Fugate, executor of M. B. Overton, deceased, was the defendant. Opinion states the case.

*Duncan & Sewell,* for the appellant.

*A. L. Pridemore,* for the appellees.

LEWIS, P., delivered the opinion of the court.

The testator, at his death in 1880, was domiciled in Tennessee, and there the will was proved and the executor qualified.

No administration upon the estate has ever been granted in Virginia. The legacy sued for is claimed under the second clause of the will, which is as follows:

"2d. I give and bequeath to Martha J. Combs, daughter of Virginia A. Combs, deceased, five hundred dollars out of the G. B. Short debt, when collected and put at interest, including the amount due her in my hands from the estate of Virginia A. Combs, deceased; and if the above Martha J. Combs should die, leaving no heirs of her body, the said amount to be divided equally between my heirs."

The bill alleges that the complainant, Moore, after the testator's death, intermarried with the said Martha, since deceased, and had issue by her, who survived her about three months, leaving the complainant its sole distributee; that both the complainant and the defendant, the executor, reside in Lee county, in this state; that the Short debt "was owing" in that county; that the same has been "collected by the said executor," and that the money remains undisbursed in his hands. The object of the bill, therefore, (as averred) is "to enforce said trust, and to compel the defendant to pay said legacy."

There was a demurrer to the bill, on the ground, *first*, of want of jurisdiction, inasmuch as the bill shows on its face that the defendant has never been appointed or qualified as the personal representative of the testator in this state, but in Tennessee only, where the testator was domiciled; and, *secondly*, because the complainant, not being the personal representative either of his deceased wife or of their deceased infant child, had no right to sue.

The defendant also answered the bill, denying, among other things, that the Short debt was payable in this state, and averring that Short, the debtor, resided in Hancock county, in Tennessee, and that the debt had there been collected.

Afterwards an amended bill was filed, in which it was charged that the Short debt was secured by a lien on certain real estate in Tennessee, which had been sold to enforce the

lien; that at the sale the defendant purchased the land for a sum sufficient to pay the debt, and now owes the purchase money. To this the defendant answered that he had not bought the land for himself individually, but for the estate, and that he owed nothing on account thereof. He admitted, however, that the debt had been collected. He also demurred to the amended bill. Afterwards Reese D. Flanary, administrator of the deceased wife, and also of her deceased child, was by consent made a party plaintiff to the suit, and when the cause came on to be heard, a decree was entered directing the legacy to be paid to him, which is the decree appealed from.

It does not appear from the record what disposition was made of the demurrers to the original and amended bills, but, as the decree adjudicates the principles of the cause, we must assume that they were overruled. *Mathews* v. *Jenkins*, 80 Va., 463.

A number of questions were discussed in the argument at the bar, of which one of the principal was, whether the legacy is a vested or contingent one; but in the view we take of the case, it will not be necessary to pass upon that question. We think the objection to the jurisdiction must be sustained, and, therefore, that the case must go off on that ground.

It is an established general rule that a grant of administration has no legal operation outside of the state from whose jurisdiction it was derived. Hence, ordinarily, no suit can be maintained by any executor or administrator, or against any executor or administrator, in his official capacity, in the courts of any other state. Story, Conf. Laws (7th ed.), sec. 513; 1 Bart., Ch. Pr., 153; *Andrews* v. *Avory*, 14 Gratt., 229; *Harvey* v. *Richards*, 1 Mason, 381. If, however, an executor or administrator should go into another state, and there, without taking out new letters of administration, should collect debts or other assets of his decedent, found there, he would be liable to be sued in the courts of that country by any creditor there, and

held liable to the extent of the assets so collected. And in *Tunstall* v. *Pollard*, 11 Leigh 1, it was decided that an executor who has qualified and received assets in a foreign country, and has brought them into this state, is liable to be sued and to be compelled to account here, although he has never qualified here, and although he may have received no assets here.

The present case, however, is not within the principle of that decision, for here no assets have been collected in this state, nor have any been brought hither by the defendant. The charge in the amended bill that the land upon which the Short debt was secured was purchased by the defendant, and that he now owes the purchase money out of which the legacy is payable, is denied in the answer, and the agreed statement of facts in the record, upon which the case was decided, is in conformity with the averments of the answer on that point. According to those averments, the land was purchased by the executor, not for himself, but for the estate, and it is neither alleged nor proven that, under the laws of Tennessee, the purchase for the estate was not a valid one. It is admitted, however, that the debt has been collected, so that the case stands upon the same footing as if the land had been sold to a stranger for cash. The fact that the executor resides in this state does not affect the case. He is none the less a foreign executor on that account. The testator at his death was an inhabitant of Tennessee; the executor qualified there; administration has never been granted here; and no assets of the testator are, or at any time have been in this state, and that is decisive of the case, so far as the question of jurisdiction is concerned.

The jurisdiction is sought to be maintained on the ground of a personal trust in the executor, which, it is insisted, may be enforced in the courts of this state, and *Governor* v. *Williams*, 3 Ired., (Law,) 152, cited, in 1 Rob. (new) Pr., 179, is relied upon. In that case, it is true, Chief Justice Ruffin expressed the opinion that an administrator may be compelled to account in a court of equity, where he may be found, to those entitled

to the estate, wherever it may be situate, on the ground of a personal trust, no matter where it may have been assumed. But the remark was purely *obiter* (the case being an action at law, and consequently no such question being before the court), and is, therefore, not authority even in the courts of North Carolina.

The doctrine is strongly combatted by Mr. Justice Story in his treatise on the Conflict of Laws, sec. 514, where numerous authorities are cited, including *Doolittle* v. *Lewis,* 7 Johns. Ch., 45, in which case Chancellor Kent said: "It is well settled that a party cannot sue or defend in our courts, as executor or administrator, under the authority of a foreign court of probate. Our courts take no notice of a foreign administration, and before we can recognize the personal representative of the deceased, in his representative character, he must be clothed with authority derived from our law. Administration only extends to the assets of the intestate within the state where it was granted. If it were otherwise, the assets might be drawn out of the state, to the great inconvenience of domestic creditors, and be distributed, perhaps, on very different terms, according to the laws of another jurisdiction." See, also, *Vaughan* v. *Northup,* 15 Pet., 1; 1 Lom. Ex'ors, marg. p. 142.

This doctrine, it is true, has been modified in Virginia to the extent of holding, as we have seen, that where a foreign executor comes into this state, *bringing assets with him,* he may be sued here. But that, as we have also seen, does not affect the present case, nor are we aware of any principle upon which the unqualified doctrine enunciated by Chief Justice Ruffin, and contended for here, can be supported.

The decree must, therefore, be reversed, and the bill dismissed for want of jurisdiction.

DECREE REVERSED.