# MARIE WACKWITZ, ADMINISTRATOR OF THE ESTATE OF BRYON HENRY WACKWITZ, DECEASED

### v.

# GASTON ROY, M.D., ET AL.

Record No. 911384

June 5, 1992

Present: All the Justices

*Steven M. Garver (Garver & Moller*, on briefs), for appellant.

*Laura J. Holland (Paul D. Krause; Jayson L. Spiegel; Jordan, Coyne, Savits & Lopata*, on brief), for appellee Julia Roy, Executrix of the Estate of Gaston Roy, M.D.

(R. Craig Jennings; Slenker, Brandt, Jennings & Johnson), for appellee Potomac Hospital Corporation of Prince William.

*Amicus Curiae:* Virginia Trial Lawyers Association (Christopher A. Meyer; Allen, Allen, Allen & Allen, on brief).

JUSTICE STEPHENSON delivered the opinion of the Court.

The principal question presented in this appeal is whether the decedent's taking of his own life bars a recovery by his administrator as a matter of law.

## I

Marie Wackwitz, administrator of the estate of Bryon Henry Wackwitz, deceased (the plaintiff), filed a wrongful death action

against Julia A. Roy, executrix of the estate of Gaston E. Roy, M.D., deceased, Gaston E. Roy, M.D., P.C., and Potomac Hospital Corporation of Prince William (Potomac Hospital) (collectively, the defendants) to recover damages for Bryon Henry Wackwitz's death. On the defendants' motion, the action was dismissed without an evidentiary hearing. Therefore, the only facts to be considered are those alleged in the plaintiff's motion for judgment.

In May 1983, Bryon was admitted to a hospital (not Potomac Hospital) where he was diagnosed by a psychiatrist as having "major depression with agitation and paranoia." Bryon "eloped" from that hospital, and, on May 6, 1983, he was admitted to Potomac Hospital's psychiatric unit.

When Bryon was admitted to Potomac Hospital, "it was noted that he had been treated in the Emergency Room for superficial lacerations of his wrist prior to transfer to the Psychiatric Unit." Bryon had stated that "he wanted to kill himself because he had been told that he would be sent to a psychiatric institution for thirty (30) years, and he preferred to die rather than spend thirty (30) years in a hospital." Bryon was "severely paranoid, delusional, anxious and afraid of relating to his peers." He also was confused.

Dr. Roy, a psychiatrist, treated Bryon at Potomac Hospital from May 6, 1983, until his discharge on May 31, 1983. During this time, "insufficient attention was paid to the depressive and suicidal components of [Bryon's] illness [, and] [t]oo little cognizance was taken of [Bryon's] past psychiatric history of depressive illness and suicidal tendencies."

When Bryon was discharged from Potomac Hospital, the defendants failed to instruct him about the proper use of medications and about their possible side effects. A drug prescribed for him had "a propensity to enhance depressive tendencies in many patients."

Plaintiff alleged that Bryon's care and treatment "was below the standard of care for a psychiatrist and a psychiatric unit." As a result of the defendants' negligence, Bryon "was prematurely and improperly discharged [from the psychiatric unit of the hospital] and committed suicide as a result thereof."

The defendants filed motions to dismiss the action on the grounds that "the plaintiff's decedent has committed an immoral and illegal act, and as a result, has no right of action against the defendants . . . predicated upon his suicide." The trial court granted the motions to dismiss, concluding that Bryon's suicide was "an immoral act"

which bars a recovery by his personal representative for wrongful death. The administrator appeals.

## II

██ In her motion for judgment, the plaintiff alleged that she was a resident of the State of Maryland. The defendants, for the first time on appeal, contend that the plaintiff's action should be dismissed because she was a nonresident administrator when she filed the action. The defendants correctly assert that Code § 26-59 bars nonresident administrators from maintaining wrongful death actions.[1] If the defect is jurisdictional, it can be raised at any time. *Slaughter* v. *Commonwealth*, 222 Va. 787, 793, 284 S.E.2d 824, 827 (1981); *Beck* v. *Semones' Admr.*, 145 Va. 429, 441, 134 S.E. 677, 680 (1926). If the defect is not jurisdictional, we will not consider it for the first time on appeal. Rule 5:25.

We initially addressed the issue in *Fugate* v. *Moore*, 86 Va. 1045, 11 S.E. 1063 (1890). There, based upon "an established general rule," *id.* at 1047, 11 S.E. at 1063, we held that a nonresident personal representative could not maintain a suit within the Commonwealth, and we dismissed the suit "for want of jurisdiction," *id.* at 1049, 11 S.E. at 1064. Clearly, the Court in *Fugate* deemed the issue to be jurisdictional.

In *Moore* v. *Smith*, 177 Va. 621, 624, 15 S.E.2d 48, 48 (1941), relying upon *Fugate*, we said that a nonresident administrator is "without authority" to institute an action in Virginia. We also said, however, that "the right of the administrator to sue must be properly and seasonably challenged." *Id.* Clearly, in *Moore*, we deemed the issue no longer to be jurisdictional.

██ In *McDaniel* v. *Carolina Pulp Co.*, 198 Va. 612, 613, 95 S.E.2d 201, 202 (1956), a wrongful death action improperly was instituted by a nonresident administrator and was dismissed under Code § 26-59. More than two years after the death of plaintiff's decedent, a resident administrator instituted a second action. *Id.* The question presented was whether the statute of limitations barred the second action or whether the statute had been tolled during the pendency of the first action. *Id.* at 614, 95 S.E.2d at 203. Citing *Fugate*

---

[1] Code § 26-59, in pertinent part, provides that "a natural person, not a resident of this Commonwealth shall not be appointed or allowed to qualify or act as personal representative . . . of any decedent . . . unless there is also appointed to serve with the nonresident personal representative . . . a person resident in this Commonwealth or corporation authorized to do business in this Commonwealth.

and *Moore*, we reaffirmed that "a foreign administrator . . . is without authority to institute . . . any action or suit in the courts of [Virginia]." *Id.* at 615, 95 S.E.2d at 204. We held, nonetheless, that the first suit had tolled the statute of limitations. *Id.* at 620, 95 S.E.2d at 207. In doing so, we said that "[w]hatever the name of the plaintiff, the real party in interest remained the same; the suit was instituted in the same right; and the cause of action was the same." *Id.* at 619, 95 S.E.2d at 206. *McDaniel* confirmed that an action brought by a nonresident administrator is not void for want of jurisdiction.

In the present case, the defendants did not "properly and seasonably" challenge the administrator's right to maintain this action in the trial court.[2] Therefore, they have waived the issue, and it cannot be raised for the first time on appeal. Rule 5:25.

### III

■ The defendants also contend that the plaintiff's wrongful death action is barred because her decedent committed suicide, which, the defendants say, is both immoral and illegal. It is well settled that, as a general rule, "a party who consents to and participates in an immoral or illegal act cannot recover damages from other participants for the consequence of that act." *Miller* v. *Bennett*, 190 Va. 162, 164-65, 56 S.E.2d 217, 218 (1949). The rule applies to both tort and contract actions, and when applied to tort actions, "consent or participation in an immoral or unlawful act by plaintiff precludes recovery for injuries sustained as a result of that act." *Id.* at 165, 56 S.E.2d at 219. The principal reason for the rule is that courts will not lend their assistance to one who participates in an illegal act and who seeks to profit therefrom. *Id.* at 165, 56 S.E.2d at 218-19. Recently, we reaffirmed the rule in *Zysk* v. *Zysk*, 239 Va. 32, 34, 387 S.E.2d 466, 467 (1990).

■ The question in the present case is whether, under the facts alleged, the plaintiff's decedent, in taking his own life, engaged in an immoral or unlawful act that bars a recovery by the plaintiff. Under English common law, suicide was a felony.

---

[2] Although the trial court addressed this defect in its letter opinion, the court, in its decree, expressly excluded it as a ground for dismissing the action.

> Felonious homicide is . . . the killing of a human creature . . . without justification or excuse. This may be done either by killing one's self, or another man.

4 William Blackstone, Commentaries *188. One who killed himself was punished "by a forfeiture of all his goods and chattels to the king." *Id.* at *190.

■ The General Assembly has declared that "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Code § 1-10. Although the General Assembly can abrogate the common law, its intent to do so must be " 'plainly manifested.' " *Hyman* v. *Glover*, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986) (quoting *Hannabass* v. *Ryan*, 164 Va. 519, 525, 180 S.E. 416, 418 (1935)).

■ We are aware of only one legislative enactment that addresses suicide as a crime. Code § 55-4 provides that "[n]o suicide . . . shall work a corruption of blood or forfeiture of estate." Thus, although the General Assembly has rescinded the punishment for suicide, it has not decriminalized the act. Suicide, therefore, remains a common law crime in Virginia as it does in a number of other common-law states. *See, e.g.*, *Southern Life & Health Ins. Co.* v. *Wynn*, 29 Ala. App. 207, 194 So. 421 (1940); *Commonwealth* v. *Mink*, 123 Mass. 422 (1877); *State* v. *Willis*, 255 N.C. 473, 121 S.E.2d 854 (1961); *State* v. *Carney*, 69 N.J.L. 478, 55 A. 44 (1903); *State* v. *Levelle*, 34 S.C. 120, 13 S.E. 319 (1891), *overruled on other grounds by State* v. *Torrence*, 406 S.E.2d 315 (S.C. 1991).

■ To constitute suicide at common law, however, a person who takes his own life "must be of years of discretion, and in his senses." 5 William Blackstone, Commentaries *189; *accord Plunkett* v. *Supreme Conclave*, 105 Va. 643, 646, 55 S.E. 9, 10 (1906) (" 'To constitute suicide at common law the person must be of years of discretion and of sound mind.' "). This common law rule comports with a contemporary definition of suicide. Suicide is defined as "the deliberate and intentional destruction of his own life by a person of years of discretion and of sound mind." Webster's Third New International Dictionary 2286 (1981).

■ In the present case, the plaintiff alleged that her decedent was of unsound mind when he killed himself. If this be so, then he is not guilty of the common law crime of suicide, and his act would not be

a bar *per se* to the administrator's action. Consequently, we hold that the trial court erred in dismissing the plaintiff's action on the ground that Bryon's act of self-destruction barred a recovery as a matter of law.

Accordingly, we will reverse the judgment and remand the case for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*

JUSTICE LACY, dissenting.

The majority clearly and carefully defines the common law crime of suicide and holds that it has not been abrogated in this jurisdiction. That holding, however, fails to address the issue which Marie Wackwitz, as administrator of Bryon Wackwitz's estate, presented to this Court for determination.

The trial court, in its opinion letter, held that:

Suicide is no longer punishable as a crime in Virginia, but it is still considered an immoral act. The Virginia Supreme Court has concluded that ''the act of taking one's own life is 'subversive of sound morality.' '' *Plunkett* v. *Supreme Conclave*, 105 Va. 643[, 650, 55 S.E. 9, 11] (1906). This is still good law in Virginia, and, when read together with [*Hill* v. *Nicodemus*, 755 F. Supp. 692 (W.D. Va. 1991)], indicates that Mr. Wackwitz's suicide precludes recovery by his estate.

This holding was specifically incorporated into the final order dismissing the lawsuit. In appealing the decision, Marie Wackwitz identified a sole assignment of error:

The trial court erred in dismissing the action on the pleadings in a wrongful death/medical malpractice action where it was alleged that the Plaintiff's Decedent committed suicide as a result of the malpractice of the Defendants in the treatment of Decedent's mental illness as a matter of law, *because suicide is an immoral act.* (Emphasis added.)

This assignment of error presents only one question, *viz*, whether the trial court erred in dismissing the plaintiff's motion for judgment on the ground that suicide constitutes an *immoral* act. This Court does not have before it, and should not decide, the question whether suicide constitutes an *illegal* act. I think this Court should confront the morality issue, decide that suicide does not constitute an immoral act, and furthermore, that a motion for judgment cannot be dismissed solely because it seeks recovery for injuries resulting from an act a court considers immoral. Unfortunately, by failing to follow the Rules of Court, Rule 5:17(c), restricting consideration to only the assignments of error presented, the Court's action today leaves an important question unresolved.

Accordingly, I would reverse the judgment of the trial court, reinstate the plaintiff's motion for judgment, and remand the case for trial on the merits.