PRESENT:  All the Justices

SHERIFF ROGER L. HARRIS, ET AL.

                                          OPINION BY
v.  Record No. 240378                     JUSTICE WESLEY G. RUSSELL, JR.
                                         APRIL 3, 2025
DENNIS CHRISTOPHER HOWARD

FROM THE COURT OF APPEALS OF VIRGINIA

Dennis Christopher Howard sued Spotsylvania County Sheriff Roger L. Harris and Deputy David Setlock (collectively "defendants") for injuries resulting from a self-inflicted gunshot wound to the head he suffered while detained in the back seat of a law enforcement vehicle.  He contended that Harris was responsible for the acts and omissions of Setlock and that Setlock's relevant acts and omissions constituted gross negligence.  The circuit court granted summary judgment for the defendants, finding that Howard's gross negligence claim failed as a matter of law and, further, that the defense of illegality barred Howard's claims.  The Court of Appeals reversed, finding both that Howard had stated a viable gross negligence claim and that his claim was not barred by the asserted illegality defense.  For the reasons that follow, we conclude that Howard's claim is barred by the defense of illegality, reverse the judgment of the Court of Appeals, and enter final judgment for the defendants.

## I.  BACKGROUND

On August 15, 2018, Howard's girlfriend took out an emergency protective order against him after they got into a heated argument.  The next day, Howard failed to show up for work, and his friend and coworker, Linwood Chavis, went to his residence to check on him.  Howard was not home, but Chavis found a suicide note authored by Howard on the kitchen table.  Chavis also noticed that there was a shotgun missing, so he reported the situation to the Spotsylvania County Sheriff's Office.

Several law enforcement officers, including Deputy Setlock, responded to the call and began searching for Howard in and around his residence. They eventually found him in the parking area of a vacant industrial building. Setlock handcuffed Howard's hands behind his back using two sets of handcuffs due to Howard's large size. After Howard was handcuffed, Setlock searched him and removed a large knife and shotgun ammunition from his pockets. The missing shotgun, however, was not located at that time. Because Howard was a convicted felon, it was not lawful for him to possess a firearm or ammunition.

Setlock placed Howard in the back seat of his vehicle and went to help others search for the missing shotgun. Approximately two minutes later, Setlock returned to his vehicle and, when Howard complained of not being able to breathe, Setlock rolled down the front passenger seat window. Setlock then went to retrieve the items he had confiscated during his search of Howard. When he returned to the vehicle, he noticed that Howard had maneuvered his cuffed hands from behind his back to under his knees. Setlock informed Howard that he would be pepper sprayed if he tried to "hop [his] cuffs." Howard assured Setlock that he was not trying to escape, but he continued to complain about his breathing, so Setlock adjusted the air conditioner and rolled down Howard's window. At some point, Howard was able to maneuver his restrained hands from behind him to in front of his body, reach through the open partition window into the front passenger area, and retrieve a handgun and loaded magazine that Setlock had left on the front passenger seat.[1]

---

[1] In addition to the items confiscated from Howard, Setlock had stored other items in the front seat of the vehicle, including a bag containing a handgun and a loaded magazine he had confiscated during an unrelated traffic stop the day before. Setlock later explained that he did not place the confiscated items in an evidence locker on the day he retrieved them because the computer system used to log evidence had been temporarily unavailable.

Next, Setlock questioned Howard about the whereabouts of the missing shotgun. Howard admitted that he was a convicted felon and discussed with Setlock that being a felon made it unlawful for him to possess even the shotgun ammunition. After initially denying any knowledge of the shotgun itself, Howard eventually told Setlock where it was, and Setlock was able to retrieve it from that location. Setlock placed the shotgun in the front passenger seat of the vehicle and set the ammunition in the center cupholder. At this point, the partition window between the front and back seats of the vehicle was open, allowing Howard to put his face through it.

Setlock subsequently drove back to Howard's residence to consult with his superior officer about potential charges and whether to take Howard to jail or a medical facility in light of his potential suicidality. Upon arriving at the residence, Setlock exited his vehicle so that he could discuss the situation with his superior officer, leaving Howard unattended in the back seat for approximately three minutes. While Setlock was discussing his plan of action with his superior officer, Howard was able to place a cellular telephone call to Chavis (using his own phone which Setlock left on the back seat of the police vehicle) and then shoot himself in the head with the confiscated handgun from the front seat. Setlock and others immediately called an ambulance and attempted to assist Howard until help arrived. Howard survived with significant injuries to his head and brain.

Howard sued the defendants in the Circuit Court of Spotsylvania County, alleging that Setlock's actions during the incident amounted to gross negligence and that Harris was liable under the doctrine of respondeat superior. The defendants filed a motion for summary judgment, arguing that the claim failed as a matter of law because the undisputed evidence showed Setlock exercised at least some degree of diligence and care toward Howard during the incident.

Furthermore, the defendants argued that Howard could not recover damages for injuries he received as a consequence of his illegal act—namely possession of a firearm by a convicted felon.[2]

Howard conceded that he was a convicted felon but emphasized the parties' dispute over whether he suffered from an "unsound mind" during the incident. He claimed that an unsound mind could negate the mental state necessary for possession of a firearm by a convicted felon, and thus, his state of mind was a material fact in dispute precluding a decision at the summary judgment stage. Howard also maintained that summary judgment was inappropriate in this case because reasonable jurors could differ on whether Setlock's actions amounted to gross negligence.

The circuit court heard arguments and ultimately granted the motion for summary judgment. It found that, as a matter of law, Setlock's actions under the circumstances did not show an indifference amounting to gross negligence. Additionally, the circuit court found Howard's injuries resulted from a criminal act—possession of a firearm by a convicted felon— that barred his tort claim.

Howard filed motions for reconsideration. At the hearing on the motions, Howard's counsel conceded, "did he violate the felon in possession statute? No question. The defense is right. This is a case where if he's a felon and he picks up a gun or he picks up a bullet, on the face of the statute the way that Virginia has applied it, he has violated that law." Defense counsel later reaffirmed the same concession upon the court's questioning. Nevertheless, defense counsel maintained that Howard's "unsound mind" prevented him from forming the

---

[2] Howard's amended complaint alleged that he possessed at least one firearm and that it was unlawful for him to possess either a firearm or ammunition due to his status as a convicted felon.

4

requisite mental state necessary to illegally possess a firearm as a convicted felon. Additionally, defense counsel argued that Howard's unsound mind prevented him from "freely and voluntarily" consenting to participation in the illegal act. Finally, Howard reiterated that reasonable jurors could find that Setlock's actions amounted to gross negligence. The circuit court denied the motions, and Howard appealed to the Court of Appeals.

The Court of Appeals reversed the circuit court's judgment in a published opinion. *Howard v. Harris*, 80 Va. App. 365 (2024). First, it held that Howard's alleged "unsound mind" raised a genuine dispute of a material fact that precluded application of the illegality defense at the summary judgment stage. *Id*. at 379. The Court of Appeals also held that a reasonable jury could find Setlock was grossly negligent in his interactions with Howard. *Id*. at 379-83.

Harris and Setlock now appeal to this Court, challenging both the Court of Appeals' conclusion regarding the illegality bar and its resolution of the gross negligence claim.

## II. ANALYSIS

### A. Standard of review

This appeal stems from the circuit court's granting the defendants' motion for summary judgment. Regarding summary judgment, "a court should grant it only when there is no genuine issue of material fact in dispute and 'the moving party is entitled to judgment as a matter of law.'" *Taylor v. Aids-Hilfe Koln, e.V.*, 301 Va. 352, 357 (2022) (quoting *Andrews v. Ring*, 266 Va. 311, 318 (2003)); *see also* Rule 3:20. When hearing "an appeal [involving] a circuit court's decision to grant or deny summary judgment," an appellate court "review[s] the application of the law to undisputed facts de novo." *Stahl v. Stitt*, 301 Va. 1, 8 (2022).

B. The defense of illegality

It is well established in Virginia that a person may not recover in tort for injuries suffered as a result of his own illegal or immoral acts. *See*, *e.g.*, *Wackwitz v. Roy*, 244 Va. 60, 64 (1992); *Zysk v. Zysk*, 239 Va. 32, 34 (1990); *Miller v. Bennett*, 190 Va. 162, 164-65 (1949). "The main premise for the rule is 'the idea that courts will not assist the participant in an illegal act who seeks to profit from the act's commission.'" *Johnson v. Campbell*, 258 Va. 453, 457 (1999) (quoting *Zysk*, 239 Va. at 34).

The defense does not preclude one who commits a criminal act from all potential tort recoveries; it bars recovery for injuries that were caused by the criminal act. As we previously have explained, "before the defense can be successful, a causal relationship must be established between participation in the illegal act and the injuries or damage claimed." *Id*. Put simply, for the defense to apply, the illegal act must be a proximate cause of the injuries claimed. *Id*. at 458.

C. Code § 18.2-308.2 and Howard

In pertinent part, Code § 18.2-308.2(A) provides that "[i]t shall be unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm[.]" Defendants argue that the undisputed facts demonstrate that Howard violated Code § 18.2-308.2 and that his violation of that statute proximately caused his claimed injuries.

The prohibition found in Code § 18.2-308.2 reflects "the General Assembly's determination that certain individuals—felons—are unfit to possess firearms, even for lawful purposes." *Armstrong v. Commonwealth*, 263 Va. 573, 582 (2002). The statute is violated when "a person subject to the provisions of" the statute, i.e., a convicted felon, "possesse[s] an instrument which was designed, made, and intended to expel a projectile by means of an

6

explosion[,]" i.e., a firearm. *Id.* at 584. As such, the statute has been correctly characterized as creating "what is essentially a strict liability" offense, *Branch v. Commonwealth*, 42 Va. App. 665, 671 (2004), that does not "contain a *scienter* or *mens rea* element" beyond knowing and intelligent possession. *Id.* at 669.

Applying the statute to the undisputed facts in this case, it is clear that Howard knowingly and intentionally possessed a firearm and ammunition, and thus, violated Code § 18.2-308.2. At the scene, prior to Howard shooting himself, Howard and Setlock discussed Howard's status as a convicted felon and that he could not lawfully possess even ammunition. Furthermore, in the circuit court, Howard conceded that he was a convicted felon, that "[t]here is no dispute that [he] intentionally shot himself in the head in an effort to end his own life," and that his possession of the firearm violated the statute. Similarly, it cannot be disputed that Howard's violation of Code § 18.2-308.2 was a proximate cause of his claimed injuries. In fact, Howard conceded this point during oral argument in this Court.[3] Thus, absent some exception to the general rule that one may not recover in tort for injuries sustained as a result of one's illegal act, the circuit court did not err in concluding that Howard's claim was barred.

Howard argues, and the Court of Appeals accepted, that there is such an exception potentially applicable in this case. Specifically, the Court of Appeals held that Howard's allegation that he was of "unsound mind," if accepted by the factfinder, would have "prevented him from having the requisite mens rea to have violated Code § 18.2-308.2(A)[.]" *Howard*, 80 Va. App. at 379. From this premise, the Court of Appeals concluded that there was a genuine

---

[3] Our recognition of the concessions made by Howard should not, in any way, be taken as a criticism of his counsel. To the contrary, by conceding that which cannot reasonably be disputed, counsel focused the argument on the pertinent question—whether the allegation that Howard was of unsound mind allows him to avoid the illegality bar. Such candor is to be commended.

7

issue of material fact as to whether Howard's injuries were caused by his own illegal act, and therefore, found that the circuit court erred in granting the defendants' motion for summary judgment. *Id.* This was error.

There are circumstances in which an allegation that a plaintiff was of unsound mind at the time of his illegal act precludes the entry of summary judgment based on the defense of illegality. This exception is limited to circumstances in which being of unsound mind negates an element of the alleged criminal act.

One such example is the common law crime of suicide. "To constitute suicide at common law the person must be of years of discretion and of sound mind[.]" *Plunkett v. Supreme Conclave, I. O. H.*, 105 Va. 643, 646 (1906) (internal quotation marks and citation omitted); *see also* 5 William Blackstone, Commentaries *189 (recognizing that, at common law, the crime of suicide required that the person "be of years of discretion, and in his senses"). Because a person having a sound mind is an element of the crime of suicide, we have held that an allegation that the "decedent was of unsound mind when he killed himself[,]" if accepted by a factfinder, meant that "he is not guilty of the common law crime of suicide, and his act would not be a bar *per se* to the administrator's [wrongful death] action." *Wackwitz*, 244 Va. at 65-66.

The Court of Appeals erred in attempting to import the rationale from the suicide cases into this case because, unlike the common law crime of suicide, Code § 18.2-308.2(A) does not contain a "sound mind" element. In doing so, the Court of Appeals effectively ignored its own, binding precedent, which correctly held that Code § 18.2-308.2(A) is "essentially a strict liability" offense, *Branch*, 42 Va. App. at 671, and does not "contain a *scienter* or *mens rea* element" beyond knowing and intentional possession. *Id*. at 669. Because it is undisputed that Howard both knew that he possessed a firearm and ammunition and that he intentionally did so,

8

his allegation that he was of unsound mind, whether accepted or not, "is of no moment[,]" *id.* at 670, in determining whether he violated Code § 18.2-308.2(A).  Accordingly, the Court of Appeals erred in concluding that summary judgment on the defendants' illegality defense was inappropriate.[4]

### III.  CONCLUSION

For the foregoing reasons, the Court of Appeals erred in reversing the circuit court's grant of summary judgment to the defendants.  Accordingly, we reverse the judgment of the Court of Appeals and enter final judgment for the defendants.[5]

*Reversed and final judgment.*

---

[4] The Court of Appeals compounded the error of ignoring its own precedent when it interjected Code § 19.2-271.6(B) into the case.  Neither party suggested, either in the circuit court or on appeal to the Court of Appeals before it was raised by the Court of Appeals, that Code § 19.2-271.6(B) had any role to play in the case.  Even assuming that a purely evidentiary statute, enacted years after the events at issue, that expressly limits its application to "any criminal case," Code § 19.2-271.6(B), had any relevance in determining whether the illegality defense was valid in this civil case (assumptions that are far from certain), it was error for the Court of Appeals to reverse the circuit court for a reason not raised below.  *See* Rule 5A:18.  When an appellate court reverses a trial court for a reason not raised by the parties, parties and the lower courts may perceive it as functioning "as something other than a neutral arbiter of a dispute, more an advocate than an umpire." *Merritt v. Commonwealth*, 69 Va. App. 452, 461 (2018).

[5] As we previously have noted, "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" C*ommonwealth v. White*, 293 Va. 411, 419 (2017) (internal alterations omitted) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)).  Applying that maxim to this case, we need not, and therefore do not, address defendants' argument that Howard's amended complaint fails to state a claim for gross negligence or the argument of defendants and the Commonwealth as an *amicus* that the illegality bar can apply even when a potential plaintiff lacks sufficient criminal intent to be found guilty of the alleged criminal act.  *See Osman v. Osman*, 285 Va. 384, 391 (2013) (holding that for the purpose of the "slayer statute[,]" Code § 55-401, that "[i]ntent in a civil context only requires that a person intended his actions; there is no requirement that the person have knowledge that his actions were wrongful").