Laverne F. **SCHIESZLER**, Personal Representative of the Estate of Michael W. Frentzel, Deceased. Plaintiff,

v.

**FERRUM COLLEGE**, a Virginia corporation, et al Defendants.

No. 7:02–CV–131.

United States District Court, W.D. Virginia, Roanoke Division.

July 15, 2002.

Arthur Patrick Strickland, Arthur P. Strickland, P.C., Roanoke, VA, Daniel R. Madock, Russell M. Kofoed, Barlow, Kobata & Denis, Chicago, IL, for plaintiff.

Joseph Aubrey Matthews, Jr., Jonnie L. Speight, Johnson, Ayers & Matthews, Roanoke, VA, for defendants.

## MEMORANDUM OPINION

KISER, Senior District Judge.

### I. Background

This wrongful death suit arises out of the suicide of Michael Frentzel. At the time of his death, Frentzel was a freshman at Ferrum College. His first semester at college apparently was not an entirely happy experience. As a result of some undisclosed "disciplinary issues," Ferrum required Frentzel to comply with certain conditions before permitting him to continue his enrollment. Among these was the requirement that Frentzel enroll in anger management counseling before returning for spring semester.

Frentzel apparently complied with these conditions and returned to Ferrum for a second semester. On February 20, 2000, Frentzel had an argument with his girlfriend, Crystal. The campus police and the resident assistant at Frentzel's on-campus dormitory, Odessa Holley, responded and intervened. At around the same time, Frentzel sent a note to Crystal in which he indicated that he intended to hang himself with his belt. Holley and the campus police were shown the note. When they responded, they found Frentzel locked in his room. When they managed to get into his room, they found Frentzel with bruises on his head. He told them the bruises were self-inflicted. The campus police informed Ferrum's dean of student affairs, David Newcombe, about the incident. Newcombe responded by requiring Frentzel to sign a statement that he would not hurt himself. Newcombe then left Frentzel alone to go speak with Crystal.

Within the next few days, Frentzel wrote another note to a friend stating "tell Crystal I will always love her." The friend told Crystal who told the defendants. They refused to allow her to return to Frentzel's dormitory room. The defendants took no other action. Soon thereafter, Frentzel wrote yet another note stating "only God can help me now," which Crystal pressed upon the defendants. When the defendants visited Frentzel's room on February 23, 2002, they found that he had hung himself with his belt.

Frentzel's aunt and guardian, LaVerne Schieszler, was named the personal representative of his estate in Illinois. She filed a wrongful death suit against Ferrum College, Newcombe and Holley. The complaint alleges a single count of wrongful death pursuant to Virginia Code §§ 8.01–5 *et seq.* It avers that the defendants "knew or personally should have known that Frentzel was likely to attempt to hurt himself if not properly supervised," that they were "negligent by failing to take adequate precautions to insure that Frentzel did not hurt himself," and that Frentzel died as a result.

The defendants have jointly moved to dismiss the complaint, arguing that (1) the court lacks subject matter jurisdiction because the complaint does not allege diversity of citizenship between the parties; (2) the representative lacks capacity to sue under Fed.R.Civ.P. 17(b); (3) a claim for wrongful death will not lie because Frentzel's suicide was an unlawful act; (4) the defendants had no legal duty to take steps to prevent Frentzel from killing himself; and (5) the defendants' actions were not the cause of Frentzel's death. In response, Schieszler moved for leave to file an amended complaint that would cure the first ground for dismissal. The defendants objected, arguing that filing the proposed amended complaint would be futile because

it fails to state a claim upon which relief can be granted.

## II. Discussion

### A. *Motion for Leave to File an Amended Complaint and Motion to Dismiss for Failure to State a Claim*

■ Federal Rule of Civil Procedure 15(a) states that leave to amend shall be "freely granted when justice so requires." Fed.R.Civ.P. 15(a). The prevailing view is that "[a] liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)." 3 Moore's Federal Practice § 15.14[1] (3d ed.1997); *see Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987). "[T]o justify a denial of such leave [to amend], it must appear to the Court that the amendment is futile, offered in bad faith, prejudicial or otherwise contrary to the interests of justice." *Roper v. County of Chesterfield, Virginia*, 807 F.Supp. 1221, 1223 (E.D.Va.1992). The defendants' primary argument against allowing leave to amend is that the amendment will be futile because it fails to state a claim for wrongful death. Thus, the issue of whether the plaintiff has stated a claim for wrongful death will determine whether I accept the amended complaint. I will therefore address that issue first.

### 1. *Dismissal Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The function of motions to dismiss is to test the law governing the claims, not the facts which support them. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Thus, I may only test the plaintiff's amended complaint for any legal deficiency, and must presume that all factual allegations in it are true. *Scheuer v.*

*Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). Furthermore, all reasonable inferences must be made in favor of the non-moving party, in this case, the plaintiff. *See Johnson v. Mueller*, 415 F.2d 354 (4th Cir.1969). I cannot dismiss any claim unless it appears beyond a doubt that the plaintiff could not recover under any set of facts which could be proven.

### 2. *Stating a Claim for Wrongful Death*

#### a. *duty*

■ In her claim for wrongful death, the plaintiff alleges that the defendants were negligent in failing to take adequate steps to prevent Frentzel from committing suicide. A cause of action for negligence will not lie unless there is a duty recognized by law. *Chesapeake and Potomac Telephone v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988) (*quoting Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951)). In order to survive this motion to dismiss, the plaintiff must have alleged facts sufficient to support her claim that the defendants owed a legal duty to assist Frentzel.

■ Ordinarily, there is no affirmative duty to act to assist or protect another absent unusual circumstances, which justify imposing such an affirmative responsibility. Under Section 314A of the Restatement (Second) of Torts (1965), an affirmative duty to aid or protect will arise when a special relationship exists between the parties. Section 314A identifies a number of special relationships, including the relationship between a common carrier and its passengers, an innkeeper and his guests, a possessor of land and his invitees, and one who takes custody of another thereby depriving him of other assistance. The special relation-

ships listed in the Restatement are not considered exclusive. Restatement (Second) of Torts § 314A cmt. b (1965) ("The relations listed are not intended to be exclusive.").

■ Virginia law similarly recognizes that a special relationship can give rise to a duty to take affirmative action to assist or protect another. *Thompson v. Skate America*, 261 Va. 121, 129, 540 S.E.2d 123, 127 (2001); *Dudas v. Glenwood Golf Club*, 261 Va. 133, 138, 540 S.E.2d 129, 132 (2001); *Wright v. Webb*, 234 Va. 527, 530, 362 S.E.2d 919, 922 (1987). *Thompson*, 261 Va. at 129, 540 S.E.2d 123. The Virginia Supreme Court has held that a special relationship exists as a matter of law between a common carrier and its passengers, an employer and his employees, an innkeeper and his guests and a business owner and his invitees. *See Thompson v. Skate America*, 261 Va. 121, 129, 540 S.E.2d 123, 127 (2001) (business owner-invitee); *A.H. v. Rockingham Publishing Co.*, 255 Va. 216 220, 495 S.E.2d 482, 485 (1998) (employer-employee); *Klingbeil Management Group Co. v. Vito*, 233 Va. 445, 448, 357 S.E.2d 200, 201 (1987) ("Examples of such a special relationship include common carrier-passenger, business proprietor-invitee, and innkeeper-guest."). These are not the only relationships that will give rise to an affirmative duty to assist or protect. The Court also has recognized that a special relationship may exist between particular plaintiffs and defendants because of the particular factual circumstances in a given case. *See Thompson*, 261 Va. at 129, 540 S.E.2d at 127 ("[S]pecial relationships may exist between particular plaintiffs and defendants, either as a matter of law or because of the particular factual circumstances in a given case."); *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 132, 523 S.E.2d 826, 830–31 (2000) (medical facility created

de facto special relationship with its patient when it determined that she was in need of constant supervision and surveillance); *Burdette v. Marks*, 244 Va. 309, 312–13, 421 S.E.2d 419, 420–21 (1992)(special relationship existed between deputy and passerby which imposed legal duty upon deputy to render assistance to passerby and protect him from attack).

In *Burdette v. Marks*, 244 Va. 309, 421 S.E.2d 419 (1992), for example, the Court considered whether a special relationship existed between a police officer and a passerby such that the officer had a duty to protect the passerby from an attack. In determining whether such a special relationship existed, the Court "consider[ed] whether [the officer] could reasonably have foreseen that he would be expected to take affirmative action to protect [the passerby] from harm." *Burdette*, 244 Va. at 312, 421 S.E.2d 419. The Court noted that the officer was present when the passerby was attacked; the officer was on duty at the time, from which it could be inferred that he was armed and able to intervene without exposing himself to undue danger; the officer knew the passerby was in great danger; and the passerby asked the officer for help. *Id.* The Court concluded that a special relationship existed "based upon the particular facts alleged." *Id.*

In the case most similar to this one, *Commercial Distributors v. Blankenship*, 240 Va. 382, 393, 397 S.E.2d 840, 846 (1990), the Virginia Supreme Court concluded that a residential facility had a duty to protect its mentally disabled residents while they were on the premises. In doing so, the Court did not expressly conclude that a special relationship existed between the facility and its residents. The Court also found that the facility's duty was not as extensive as that of a hospital, nursing home or other custodial institution. *Id.* Nonetheless, the Court indicated that, had

the plaintiff's decedent, a resident who committed suicide, been on the premises at the time of his death, and had his suicide been foreseeable, the facility would have had a duty to take steps to assist him. *Id.*

The Virginia Supreme Court has not yet addressed the issue of whether a special relationship may arise between a university or college and a student. In a case arising under Virginia law, the Fourth Circuit has concluded that "[a school's] acceptance of a student with special problems created a corresponding duty to take reasonable steps to cope with the problems." *Seidman v. Fishburne–Hudgins Ed. Found.*, 724 F.2d 413, 418 (1984). *Seidman* involved a private boarding school, which, upon dismissing a troubled student, returned his personal items, including a firearm. *Id.* The student shot himself immediately thereafter. *Id.* Thus, the Fourth Circuit found a duty to protect under facts very similar to the facts in this case. Beyond its conclusion that the school had a duty to protect the student, however, the court did not discuss whether a special relationship existed between the school and the student or whether the duty arose from such a relationship. Moreover, this case can be distinguished because *Seidman* involved a minor. Because the student in *Seidman* was a minor, the Fourth Circuit may simply have presumed that the school stood *in loco parentis* to the student, and that a special relationship therefore existed.. The instant case does not involve a minor, and therefore, strictly speaking, no duty arises from an *in loco parentis* relationship between Ferrum and Frentzel.

I can find no cases in other jurisdictions, and the parties have proffered none, that address whether a special relationship exists under the facts presented in this case. The defendants point to two cases, *Jain v. Iowa*, 617 N.W.2d 293 (2000), and *Bogust*

*v. Iverson*, 10 Wis.2d 129, 102 N.W.2d 228 (1960). Neither of these cases are helpful because they do not address whether a special relationship exists between school and student. Rather, both cases consider liability under Restatement (Second) of Torts § 323 (1965), a theory the plaintiff in this case abandoned at oral argument.

A number of cases in recent years have considered whether colleges and universities have a duty to take steps to protect students who voluntarily become intoxicated. *See Bradshaw v. Rawlings*, 612 F.2d 135 (3d Cir.1979) (finding no special relationship); *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 987 P.2d 300 (1999) (same); *Univ. of Denver v. Whitlock*, 744 P.2d 54 (Colo.1987)(same); *Beach v. University of Utah*, 726 P.2d 413, 416 (Utah 1986) (same); *see also Furek v. University of Delaware*, 594 A.2d 506, 522 (Del.1991) (finding special relationship giving rise to duty to protect student from hazing injuries). In the vast bulk of these cases, courts have concluded that no special relationship existed. Underlying the analysis in these cases is the conclusion that the school could not have foreseen that the student was in danger. In *Beach v. University of Utah*, for example, the Utah Supreme Court concluded that no special relationship existed because nothing University personnel knew would have led them to conclude that the plaintiff might be injured. 726 P.2d 413, 416 (1986). In *Furek v. University of Delaware*, the court acknowledged that no duty arose merely from the school-student relationship, but concluded that when a college or university knows of the danger to its students, it has a duty to aid or protect them. 594 A.2d 506, 519–520 (Del.1991).

The conclusion that the relationship between a college or university and its students can give rise to a duty to protect students from harms of which the school

has knowledge is consistent with the Virginia Supreme Court's analysis in other contexts. In the recently decided *Thompson v. Skate America, Inc.*, 261 Va. 121, 129, 540 S.E.2d 123, 127 (2001), a case involving the duty of landowner to protect his invitees, the Court concluded that special relationships may exist between particular plaintiffs and defendants because of the factual circumstances of a case. In addition, the Court's analysis has placed particular emphasis on the foreseeability of the harm. Under the Court's precedents, the existence of a special relationship will not, standing alone, give rise to a duty; the harm must be foreseeable. *See Dudas v. Glenwood Golf Club*, 261 Va. 133, 138, 540 S.E.2d 129, 132 (2001) (declining to find inherent in special relationship an absolute duty to protect); *Wright v. Webb*, 234 Va. 527, 530, 362 S.E.2d 919, 921 (1987) (declining to create a duty of care requiring a business invitor to protect his business invitee). In *Wright v. Webb*, the Court held that an affirmative duty to assist or protect will not arise unless the defendant knew there was "an imminent probability of harm." *Wright*, 234 Va. at 533, 362 S.E.2d 919; *see also Thompson*, 261 Va. at 129, 540 S.E.2d 123. *Wright* involved a suit against motel owners for injuries sustained by an invitee as a result of being assaulted in the motel's parking lot. *Wright*, 234 Va. at 529, 362 S.E.2d 919. "In determining whether a duty exists," the Court stated, "the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant must be taken into account." *Id.* at 531, 362 S.E.2d 919. The Court concluded that prior crimes committed on the premises of the motel did not give the defendant notice of a "specific" or "imminent" danger. *Id.* at 533, 362 S.E.2d 919. Accordingly, the Court held that the motel owners had no duty to assist or protect their invitee. *Id.*

While it is unlikely that Virginia would conclude that a special relationship exists as a matter of law between colleges and universities and their students, it might find that a special relationship exists on the particular facts alleged in this case. Frentzel was a full-time student at Ferrum College. He lived in an on-campus dormitory. The defendants were aware that Frentzel had had emotional problems; they had required him to seek anger management counseling before permitting him to return to school for a second semester. The defendants knew that, within days of his death, Frentzel was found by campus police alone in his room with bruises on his head and that he claimed these bruises were self-inflicted. The defendants knew that, at around the same time, Frentzel had sent a message to his girlfriend, in which he stated that he intended to kill himself. The defendants knew that Frentzel had sent other communications, to his girlfriend and to another friend, suggesting that he intended to kill himself. After Frentzel was found alone in his room with bruises on his head, the defendants required Frentzel to sign a statement that he would not hurt himself. This last fact, more than any other, indicates that the defendants believed Frentzel was likely to harm himself. Based on these alleged facts, a trier of fact could conclude that there was "an imminent probability" that Frentzel would try to hurt himself, and that the defendants had notice of this specific harm. Thus, I find that the plaintiff has alleged sufficient facts to support her claim that a special relationship existed between Frentzel and defendants giving rise to a duty to protect Frentzel from the foreseeable danger that he would hurt himself.

In reaching this conclusion, I have also considered whether defendants could reasonably have foreseen that they would be

expected to take affirmative action to assist Frentzel. *See Burdette v. Marks,* 244 Va. 309, 312, 421 S.E.2d 419 (1992) ("In determining whether such a special relation existed, it is important to consider whether [the defendant] reasonably could have foreseen that he would be expected to take affirmative action to protect [the plaintiff]."). It is true that colleges are not insurers of the safety of their students. *See Coghlan v. Beta Theta Pi Fraternity,* 133 Idaho 388, 400, 987 P.2d 300, 312 (1999). It is also true that Ferrum did not technically stand *in loco parentis* vis-a-vis Frentzel and his fellow students. Nonetheless, "[p]arents, students, and the general community still have a reasonable expectation, fostered in part by colleges themselves, that reasonable care will be exercised to protect resident students from foreseeable harm." *Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331 (1983).

 The plaintiff also has alleged sufficient facts to support her allegation that defendants Ferrum and Newcombe breached a duty to assist Frentzel. According to the facts alleged in the complaint, after finding Frentzel alone in his room with bruises on his head, Frentzel was left alone. After Frentzel sent the message to his girlfriend suggesting that he might hurt himself, the defendants responded by refusing to permit her to return to his room. According to the complaint, they took no steps to ensure that Frentzel was supervised or to contact his guardian. They failed to obtain counseling for him even though they had previously required him to undergo counseling. They took no other steps. That said, the facts alleged do not indicate that defendant Holley, the resident assistant at Frentzel's dormitory, could have taken any additional steps to aid or protect Frentzel absent some direction from Ferrum or Newcom-

be. Thus, I find that, under the facts alleged, only Ferrum and Holcombe could have breached their duty to render assistance to Frentzel. The claim against defendant Holley is therefore dismissed.

The defendants contend this case is different from the cases cited above because Frentzel committed suicide. Admittedly, most of the cases in which the Virginia Supreme Court has discussed an affirmative duty to protect or assist have involved harm caused by a third party, not harm caused by one's self. *See Thompson v. Skate America,* 261 Va. 121, 129, 540 S.E.2d 123, 127 (2001) (discussing duty of business owner to protect invitee from assault by third party); *See Dudas v. Glenwood Golf Club,* 261 Va. 133, 138, 540 S.E.2d 129, 132 (2001) (same); *Burdette v. Marks,* 244 Va. 309, 421 S.E.2d 419 (1992) (considering duty of police officer to protect passerby from assailant); *Wright v. Webb,* 234 Va. 527, 530, 362 S.E.2d 919, 921 (1987) (finding motel owners had no duty to protect invitee from criminal assault). The defendants argue that the Virginia Supreme Court has limited the duty to prevent suicide to cases involving psychiatrists and their patients and jailors and prisoners. The cases cited by the defendants establish no such limit. In *Molchon v. Tyler,* the Court considered whether the plaintiff, the estate of a psychiatric patient, could recover for the negligence of his psychiatrist if the patient was involved in an illegal act, committing suicide, at the time of his death. 262 Va. 175, 180, 546 S.E.2d 691, 695 (2001). The Court also considered whether the psychiatrist's negligence was the proximate cause of the plaintiff's injury. 262 Va. at 181, 546 S.E.2d at 695. The Court apparently presumed that the psychiatrist had a duty to protect the plaintiff. In *Wackwitz v. Roy,* the Court once again considered whether suicide barred recovery by a mental patient his psychiatrist and mental hospital

for wrongful death. 244 Va. 60, 418 S.E.2d 861. Again, the Court apparently presumed that the doctor and hospital had a duty to assist their patient. The Court in no way indicated that it intended to limit the circumstances under which a duty would arise to protect or assist a person who is suicidal.

Next, the defendants urge me to find that they had no duty to Frentzel because they had insufficient custody or control of him. They rely upon two cases in which the Virginia Supreme Court considers the duty to control the conduct of third parties. In *Fox v. Custis,* the Court found that a parole officer was not under a duty to exercise control over the conduct of his parolee by having him arrested and thereby prevent him from harming the plaintiffs. 236 Va. 69, 372 S.E.2d 373 (1988). The Court took note of Restatement (Second) of Torts § 315(a) (1965), which provides that there is no duty to control the conduct of a third person to prevent him from causing physical harm to another unless a "special relation" exists between the actor and the third person. *Id.* at 74, 372 S.E.2d 373. The Court then noted that the "special relation[s]" mentioned in Section 315(a) are listed in Sections 316–319 and concluded that Section 319 was applicable. *Id.* at 75, 372 S.E.2d 373. Section 319 provides that "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing harm." Restatement (Second) of Torts § 319 (1965). The Court concluded that, under Section 319, a Section 315(a) "special relation" would exist only if the defendant had taken charge of, or exercised control over, his parolee. In *Nasser v. Parker,* also cited by the defendants, the Court similarly found that a psychiatrist and a mental hospital had not taken charge of a patient, and therefore had no duty to control the conduct of the patient in order to protect third parties. 249 Va. 172, 178, 455 S.E.2d 502, 505 (1995). *Fox* and *Nasser* are inapposite because Section 315(a) does not apply to this case. Section 315(a) provides that an actor has a duty to protect third parties from harm caused by a person with whom the actor has a special relationship. As noted above, the special relationships giving rise to the duty established in Section 315(a) are set out in Section 316–319. Section 319 provides that a special relationship arises when the actor has "take[n] charge of" a third person. This case involves the duty of an actor to protect the person with whom he has a special relationship, a duty established in Section 315(b). The special relationships that give rise to the duty established in Section 315(b) are set out in Section 314A, a provision I have already discussed thoroughly. *See* Restatement (Second) of Torts § 315 Cmt. on Clauses (a) and (b) (1965). Because Sections 315(a) and 319 do not apply to this case, the plaintiff need not have alleged facts establishing that the defendants had taken charge of Frentzel.

### b. proximate cause

Next, the defendants contend that the complaint fails to allege facts from which a trier of fact could find that their acts or omissions proximately caused Frentzel's suicide. Negligent breach of a duty is actionable only when it constitutes a proximate cause of the injury. *S & C Co. v. Horne,* 218 Va. 124, 128, 235 S.E.2d 456 (1977). Ordinarily, however, questions of proximate cause are not decided on a motion to dismiss. *Goff v. Jones,* 47 F.Supp.2d 692 (E.D.Va.1999). They only become a question of law if the facts alleged are susceptible of only one inference. *Poliquin v. Daniels,* 254 Va. 51, 486 S.E.2d

530, 534 (1997); *Hubbard v. Murray,* 173 Va. 448, 3 S.E.2d 397, 402 (1939).

In Virginia, an injury is proximately caused by a defendant's negligence if the injury is the natural and probable consequence of the negligence. *Wyatt v. Chesapeake & Potomac Tel. Co.,* 158 Va. 470, 476, 163 S.E. 370 (1932). The natural and probable consequences are those which human foresight can foresee. *Id.* at 479, 163 S.E. 370. However, there may be more than one proximate cause for an event. *Jenkins v. Payne,* 251 Va. 122, 465 S.E.2d 795, 799 (1996); *Etheridge v. Norfolk So. R. Co.,* 143 Va. 789, 129 S.E. 680, 683 (1925).

Keeping in mind that proximate cause is a question of fact unless the facts alleged are susceptible of only one inference, *Poliquin,* 486 S.E.2d at 534, I cannot find at this early stage of the proceedings that the defendants' alleged failure to take steps to aid Frentzel was not a proximate cause of his death. The plaintiff has alleged that the defendants had been told that Frentzel had more than once threatened to kill himself and that he had already injured himself once. Thus, the facts alleged in the complaint indicate that the risk that Frentzel would in fact take his own life was foreseeable. Although the defendants had at their disposal campus police, the College's counseling services and the resident assistant in Frentzel's dormitory, the plaintiff alleges that they took no steps to ensure that Frentzel was supervised. In addition, according to the plaintiff's amended complaint, the defendants did not contact Frentzel's guardian and refused to permit Frentzel's girlfriend to return to his room after he threatened to injure himself. Instead, the defendants left Frentzel alone. While alone, in his room, Frentzel hung himself. According to the complaint, all of these events occurred within a three-day period. In view of these alleged facts, I cannot say as a matter of law that Frentzel's suicide was not a foreseeable result of defendants' failure to ensure that Frentzel was supervised.

### 3. Motion for Leave to File an Amended Complaint

Because I find that the plaintiff has sufficiently alleged duty and proximate cause, I find that the plaintiff has stated a claim for wrongful death resulting from the defendants' negligence. Consequently, the plaintiff's motion for leave to file an amended complaint is not futile. I will therefore grant it. For purposes of deciding the remaining issues raised by the defendants' motion to dismiss, I will consider the facts alleged in the amended complaint already filed by the plaintiff.

### B. Diversity Jurisdiction

Initially, the defendants argue that the court lacks subject matter jurisdiction because the plaintiff failed to allege diversity of citizenship. The original complaint alleged that Ms. Schieszler is a citizen of Illinois and that Frentzel, at the time of his death, was a "student in residence" at Ferrum, which is located in Virginia. In her amended complaint, the plaintiff alleges that Frentzel was a resident of Illinois at the time of his death. Although Schieszler is the plaintiff in this wrongful death suit, under 28 U.S.C. § 1332(c), as the legal representative of Frentzel's estate, she is deemed to be a citizen of the same state as was Frentzel. Thus, had Frentzel been a citizen of Virginia there would be no diversity of citizenship.

To determine state citizenship, courts look to the person's domicile. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.,* 145 F.3d 660, 663 (4th Cir.1998). A person's domicile, in turn, is the place where a person has a fixed and permanent home to

which he intends to return whenever he is absent therefrom. *C.I.R. v. Swent*, 155 F.2d 513, 515 (4th Cir.1946). Because students who are attending college out-of-state are often located in state only for the duration of and for the purpose of their studies, they are generally presumed to lack intention to remain in state indefinitely. *Mitchell v. Mackey*, 915 F.Supp. 388, 391 (M.D.Ga.1996). Although Frentzel was a student in Virginia at the time of his death, he apparently came here from Illinois, where his guardian remained a citizen. As the facts of this case develop, the defendants may adduce evidence that Frentzel had intended to remain in Virginia indefinitely. At this stage of the proceedings, however, the plaintiff has adequately pled diversity of citizenship.

## C. *Capacity*

■ The defendants argue that the plaintiff lacks capacity to maintain this suit because she has failed to obtain appointment in Virginia as a non-resident fiduciary over Frentzel's estate. Under Federal Rule of Civil Procedure 17(b), the capacity of a person to sue or be sued is determined by the law of the individual's domicile unless the person is acting in a representative capacity. In all other cases, capacity is determined by the law of the state in which the district court sits. Fed.R.Civ.P. 17(b). Because Schieszler is acting in a representative capacity in this case, her capacity to sue is determined by Virginia law.

■ Until recently, non-Virginians were prohibited from serving as a sole administrator of a decedent's estate. In 1996, the legislature finally permitted non-residents to be "appointed or allowed to qualify" as administrator so long as they consent to service of process in matters related to administration of the estate and post bond with surety. Va.Code. Ann. § 26–59 (Repl.Vol.1997). A foreign administrator who has not qualified in Virginia is without authority to institute an action or suit in the courts of Virginia. *See McDaniel v. North Carolina Pulp Co.*, 198 Va. 612, 615, 95 S.E.2d 201 (1956). The Fourth Circuit has held that this rule also applies to suits brought in federal courts. *Holt v. Middlebrook*, 214 F.2d 187, 190 (4th Cir.1954).

In her original complaint, Schieszler did not allege that she had qualified in Virginia as the administratrix of Frentzel's estate. As a non-resident administratrix who had not qualified in Virginia, Schieszler was without authority to commence this wrongful death suit. In her amended complaint, Schieszler alleged that she "has applied for and expects to be appointed as the non-resident Administratrix and Personal Representative" of Frentzel's estate. And indeed, within days of oral argument on the defendants' motion to dismiss, Schieszler filed with the court a letter certifying her qualification in Virginia as administratrix of Frentzel's estate. Nonetheless, Schieszler had not qualified either at the time she filed the amended complaint or at the time oral argument was held on the defendants' motion to dismiss. Thus, Schieszler remained without authority to maintain this suit.

Federal Rule of Civil Procedure 15(a) permits me to grant leave to file amended pleadings when justice so requires. Because justice requires that the plaintiff be allowed to assert her capacity as administratrix of Frentzel's estate, I will grant her leave to file a second amended complaint.[1]

---

1. Even were I to dismiss this case outright on the ground that Schieszler lacked capacity to bring suit, Virginia Code of 1950 § 8.01–

244(B) would preserve the suit. That statute provides as follows:

The federal courts have freely upheld the filing of an amended complaint under these circumstances. *See Russell v. New Amsterdam Casualty Company,* 303 F.2d 674, 680–81 (8th Cir.1962) (permitting plaintiff to amend complaint after being named personal representative of estate); *Lambert v. Beverly Enterprises, Inc.,* 753 F.Supp. 267 (W.D.Ark.1990) (same); *Brohan on Behalf of Brohan v. Volkswagen Mfg. Corp. of America,* 97 F.R.D. 46, 49 (E.D.N.Y.1983) (same); *Shinkle v. Union City Body Co.,* 94 F.R.D. 631, 638 (D.Kan. 1982) (same). Moreover, the defendants will not suffer any hardship by the addition of the plaintiff as administratrix. The persons involved and the facts will remain the same as originally pleaded. Thus, the plaintiff has ten days from the entry of the Order accompanying this Memorandum Opinion to file a second amended complaint.

### D. *Illegal Act Doctrine*

 Lastly, the defendants contend that the plaintiff is barred from recovering for wrongful death because Frentzel's death was caused by suicide, an illegal act. In general, a plaintiff may not recover for an injury received as the result of another's negligence if the plaintiff voluntarily was involved in an illegal act at the time the injury occurred. *See Molchon v. Tyler,* 262 Va. 175, 180–181, 546 S.E.2d 691 (2001); *Lee v. Nationwide Mutual Insurance Co.,* 255 Va. 279, 282, 497 S.E.2d 328 (1998); *Miller v. Bennett,* 190 Va. 162, 164–65, 56 S.E.2d 217 (1949). However, the Virginia Supreme Court has held that if the illegal act in question is the victim's suicide, and the suicide was the result of the victim being of unsound mind at the time of his death, the defense of illegality will not bar recovery for wrongful death. *See Molchon v. Tyler,* 262 Va. 175, 181, 546 S.E.2d 691 (2001); *Wackwitz v. Roy,* 244 Va. 60, 65–66, 418 S.E.2d 861 (1992). In *Molchon,* a personal representative sued his decedent's psychiatrist who had released the decedent from hospital care after diagnosing him with acute depression and suicidal tendencies; the decedent thereafter committed suicide. *Molchon v. Tyler,* 262 Va. 175, 181, 546 S.E.2d 691 (2001). The Virginia Supreme Court concluded that the personal representative could bring a wrongful death action against the psychiatrist. *Id.* In her Amended Complaint, Schieszler alleges that Frentzel "was not of sound mind at the time he took his own life." In support of this legal conclusion, she alleges that Ferrum required Michael to enter counseling as a condition of his continued enrollment and that he had threatened suicide and physically injured himself in the days before his death. I find that the plaintiff has sufficiently alleged that Frentzel was of unsound mind at the time of his death. Thus, the fact that Frentzel's death was caused by suicide will not bar recovery for wrongful death at this stage of the proceedings.

### III. Conclusion

In sum, I find that the plaintiff has succeeded in stating a claim for wrongful death against defendants Ferrum and Holcombe. The plaintiff has not alleged facts sufficient to state a claim against defendant Holley, however, and she is dismissed

---

If any such action is brought within such period of two years after such person's death and for any cause abates or is dismissed without determining the merits of such action, the time such action is pending shall not be counted as any part of such period of two years and another action may be brought within the remaining period of such two years as if such former action had not been instituted.

Because Schieszler brought her suit one day prior to the running of the two-year statute of limitations, she would have one day to refile her suit.

from the case. Because the plaintiff has stated a claim for wrongful death against Ferrum and Holcombe, I will grant her motion for leave to file and amended complaint. I also find that the plaintiff has adequately pleaded diversity of citizenship between the parties. Because I find that justice so requires, I will grant plaintiff leave to file a Second Amended Complaint asserting her capacity as administratrix of Frentzel's estate. Finally, because the plaintiff has sufficiently alleged that Frenztel's was of unsound mind at the time of his death, the fact that his death was caused by suicide will not bar recovery at this stage of the proceedings. For these reasons, the defendants' Motion to Dismiss is DENIED as to defendants Ferrum and Holcombe. The defendants' Motion to Dismiss is GRANTED as to defendant Holley.

The Clerk is directed to send a certified copy of this Memorandum Opinion to all counsel of record.