# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2650

_____

Carolyn Freeman,                          *
                                          *
            Appellant,                    *
                                          *
      v.                                  *
                                          *
Scott Busch; Gene C. Hildreth;            *
John Hatfield; Simpson College,           *
                                          *
            Appellees.                    *

_____

No. 02-2734

_____

Carolyn Freeman,                          *
                                          *
            Appellee,                     *
                                          *
      v.                                  *
                                          *
Scott Busch,                              *
                                          *
            Appellant.                    *

Appeals from the United States
District Court for the
Southern District of Iowa.

_____

Submitted:  February 13, 2003

Filed:  November 17, 2003

_____

Before LOKEN,[1] Chief Judge, SMITH, Circuit Judge, and LIMBAUGH, District
    Judge.[2]

_____

SMITH, Circuit Judge.

Carolyn Freeman attended a party at the invitation of Scott Busch, Gene Hildreth, and John Hatfield in Busch's and Hildreth's dorm room at Simpson College. At the party, Freeman became inebriated, passed out, and was allegedly sexually assaulted. Later, Freeman filed tort claims against Simpson College, Busch, Hildreth, and Hatfield. Simpson College and Busch filed motions for summary judgment. The district court[3] granted Simpson College's motion in full and Busch's motion in part. After a jury trial on the remaining issues, the jury found for Freeman. Freeman appeals the district court's grants of summary judgment and dismissal of a claim for punitive damages. Busch cross-appeals. On cross-appeal Busch challenges the district court's ruling which denied his motion for mistrial. He also claims that the district court erroneously instructed the jury. After consideration of these appeals, we affirm the rulings of the district court.

_____

[1] The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

[2] The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

[3] The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

## I.

Busch invited his ex-girlfriend Freeman–who was nineteen at the time–and her friends Anne Huffman and Ricci Kowalski to his Simpson College dorm room for a party. All three women accepted Busch's invitation with the expectation that there would be alcohol served at the party. A friend of Busch's purchased the alcohol–a bottle of vodka and a bottle of rum–for the party. Busch and Hildreth contributed money to the alcohol and other party supplies.

After consuming an unknown quantity of alcohol, Freeman became visibly intoxicated. Busch, with the assistance of Huffman and Kowalski, carried Freeman to his bedroom to lie down. Freeman became ill, vomited on her clothes and passed out. Busch and others helped her to change her clothes. Eventually the others left to attend a fraternity party, leaving Freeman and Busch alone in Busch's bedroom. At some point later, Busch left his fourth floor room and went downstairs to the third floor of his dormitory. While there, he had a conversation with the on-duty resident assistant ("R.A."), Brian Huggins. Busch informed Huggins that Freeman was his visitor; that she had consumed alcohol; and that after consuming it, she had vomited and passed out. Huggins told Busch–who knew Busch because both served as Simpson College security officers–to monitor Freeman's condition and, if the condition worsened, to report back to him.

Later that evening, Busch and Freeman had sexual intercourse. Busch claims that they had consensual sex after Freeman awoke. Freeman, who cannot remember what happened after she became inebriated, alleged that Busch sexually assaulted her. After Busch and Freeman's sexual encounter, the others returned from the fraternity party to Busch's dorm room. When Hatfield was getting ready to leave, Busch called him into the bedroom. Busch directed Hatfield's attention to a then-unconscious Freeman and permitted him to fondle her breasts. Busch later also admitted that he permitted Hildreth to do the same.

The next morning Freeman awoke on Busch's couch, unable to remember what had happened the previous evening. She first became suspicious that something may have happened when she went to the bathroom, discovered that her underwear was on backwards, and realized that her tampon was crushed.

As a result of these events, Freeman sued Simpson College, Busch, Hildreth, and Hatfield. Freeman alleged counts of negligence against Busch for failure to summon medical assistance and against Simpson College for the acts of its employees–Busch and Huggins. The district court dismissed the claims, however, on Simpson College's and Busch's motions for summary judgment. As pertinent to this appeal, Freeman also alleged a claim of sexual battery against Busch, Hildreth, and Hatfield as well as an additional claim of negligence–based upon delivery of alcohol to a minor–against Busch. Hildreth and Busch then filed a cross-claim alleging, among other things, prosecutorial misconduct. Later, Freeman attempted to amend her complaint to add a claim of punitive damages, but the district court denied that motion.

The case went to trial on claims of sexual battery and of negligence based upon delivery of alcohol to a minor. Prior to and during trial, the district court made a number of evidentiary rulings to which either Freeman or Busch objected. In addition, Busch objected to one of the trial court's jury instructions and also argued for a mistrial. After finding for Freeman on both counts and against Busch on his one count, the jury awarded Freeman $81,396.27 in damages ($66,947.64 against Busch, $14,447.63 against Hildreth, and $1.00 against Hatfield). Both Freeman and Busch appeal.

II.

On appeal Freeman raises two issues that merit discussion.[4] First, Freeman appeals the district court's grants of summary judgment. In addition, she appeals the dismissal of her claim for punitive damages. We discuss each claim in turn.

A.

Freeman initially argues that the district court erroneously granted Simpson College's and Busch's motions for summary judgment. "We review de novo [ ] grant[s] of summary judgment, applying the same standard as the district court." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002) (citation omitted). "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Thomas v. Union Pac. R.R. Co.*, 308 F.3d 891, 893 (8th Cir. 2002) (citation omitted). In this diversity case, we also review the district court's interpretation of state law de novo. *Walk v. Starkey Mach., Inc.*, 180 F.3d 937, 939 (8th Cir. 1999) (citations omitted). The district court addressed each of the grants of summary judgment separately. So do we.

---

[4] Freeman also argues that the district court abused its discretion when it did not permit her to introduce evidence of or make reference to the drug Rohypnol. However, Freeman failed to preserve this issue through an offer of proof. *United States v. Kirkie*, 261 F.3d 761, 767 (8th Cir. 2001) (citation omitted). Even if she had, the argument would be without merit. As the district noted, "[o]ther than sheer speculation [on the part of Freeman], there is no evidence Rohypnol was used during Busch's party."

1.

First, Freeman alleged a claim of negligence against Simpson College. In this claim, Freeman alleged in part that Simpson College should be liable for the negligence of its employees–Busch and Huggins–under the doctrine of respondeat superior. However, the doctrine of respondeat superior provides that an employer is liable for the negligent acts of its employees, only if the employees' acts were within the scope of their employment. *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). In this case, it is undisputed that neither Busch nor Huggins was on duty as a university security guard. As a result, Simpson College cannot be responsible for any negligent acts that their employees may perform while off duty.[5] *Restatement (Second) of Agency* § 219 cmt. d (1958) ("The master's liability for the servant's tortious conduct ordinarily exists only during . . . such times and in such places as he is authorized to perform service, or at times and places reasonably close to them."); *see also Restatement (Second) of Agency* § 228 (1958). Nevertheless, Simpson College concedes that Huggins was acting within the scope of his duties as an R.A. Thus, if Huggins was negligent as an R.A., then Simpson College could be liable for any of his negligent acts.

In order to prove a case of negligence against Huggins, Freeman must establish: that Huggins owed her a legal duty; that he breached that duty; and that the breach of the duty caused her damages. *Hartig v. Francois*, 562 N.W.2d 427, 429 (Iowa 1997) (citations omitted). Freeman argues that Huggins owed her legal duties based upon §§ 314A and 324 of the *Restatement (Second) of Torts*.

---

[5] Freeman's novel argument that an agency relationship was created when Huggins told Busch to report back to him is neither supported by case law nor by the record.

Freeman first argues that Huggins owed her a legal duty based upon *Restatement* § 314A. In essence, she argues that a special relationship existed between Freeman and Huggins, which imposed such a duty on Huggins to act for Freeman's protection. *See Restatement (Second) of Torts* § 314A. Usually the law recognizes that a special relationship exists between persons in a relationship of "dependence or of mutual dependence." *Id.* cmt. b. Commonly recognized "special relations" under *Restatement* § 314A "include common carrier/passenger, innkeeper/guest, landlord/invitee, and peace officer/arrestee." *Garofalo v. Lambda Chi Alpha Fraternity*, 616 N.W.2d 647, 652 (Iowa 2000) (citing *Restatement (Second) of Torts* § 314A, at 118 (1968)). Freeman urges us to recognize a new "special relationship"–one between a college and a guest of a student attending that college. Freeman does not cite, and we can find no cases that so hold.

In fact, since the late 1970s, the general rule is that no special relationship exists between a college and its *own* students because a college is not an insurer of the safety of its students. *See, e.g.*, *Bradshaw v. Rawlings*, 612 F.2d 135, 138–40 (3d Cir. 1979) (holding that the time in which colleges and universities "assumed a role In loco parentis" no longer exists and as a result no special "custodial duty" between a college and its students exists); *Booker v. Lehigh Univ.*, 800 F.Supp. 234, 237–41 (E.D. Pa. 1992) (finding no special relationship); *Nero v. Kan. St. Univ.*, 861 P.2d 768, 778 (Kan. 1993) (same); *Univ. of Denver v. Whitlock*, 744 P.2d 54, 59–61 (Colo. 1987) (en banc) (same); *Eiseman v. State*, 511 N.E.2d 1128, 1136–37 (N.Y. 1987) (same); *Beach v. Univ. of Utah*, 726 P.2d 413, 415–16 (Utah 1986) (same); *Rabel v. Illinois Wesleyan Univ.*, 514 N.E.2d 552, 560–61 (Ill. Ct. App. 1987) (holding that the responsibility of a university "is to properly educate" its students, not to act as their custodian); *Baldwin v. Zoradi*, 123 Cal. App.3d 275, 284–91 (Cal. Ct. App. 1981) (finding no special relationship); *cf. Garofalo*, 616 N.W.2d at 654 (analogizing

the lack of a custodial relationship between a university and its students to the lack of a custodial relationship between a national fraternity chapter and its members).[6]

In this case Freeman asks us to overlook this precedent. We decline to do so. Creation of a special relationship between a college and a student's guest would result in a broad and unprecedented expansion of duty under *Restatement* § 314A.[7] As a result, we conclude that no "special relationship" existed between Huggins and Freeman which would impose a legal duty on Huggins, as an R.A., to act for Freeman's protection.

b.

Freeman also argues that Huggins assumed a legal duty to come to her aid under *Restatement* § 324. *See also Garofalo*, 616 N.W.2d at 654–55. (*Restatement* § 324 applicable in Iowa). *Restatement* § 324 provides that Huggins may assume a duty to act reasonably if he, being under no duty to do so, "took charge of" Freeman.

---

[6] However, the rule is not absolute, and in very limited circumstances, courts have found such a relationship. *See Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1368 (3d Cir. 1993) (holding that there is a distinction between the relationship of a college and its students and the relationship of a college and its student-athletes); *Schieszler v. Ferrum College*, 236 F.Supp.2d 602, 609 (E.D. Va. 2002) (finding in general that no university/student relationship exists, but in this specific case in which a college had repeated warnings that a student had emotional problems, had made threats of suicide, and had required the student to sign a statement that "he would no longer hurt himself," a special relationship did exist); *see also Furek v. Univ. of Delaware*, 594 A.2d 506, 521–22 (Del. 1991) (finding a duty in the context of fraternity hazing); *McClure v. Fairfield Univ.*, 35 Conn. L. Rptr. 169, *available at* 2003 WL 21524786, at *4 (Conn. Super. 2003) (holding that the rule of *Bradshaw* and *Beach* is not absolute and that a university had a duty to its students under *Restatement* § 322).

[7] Freeman also attempts to analogize her situation to the relationships between a landlord and its tenants and the relationships between a business and its invitees. Such an argument is unsupported by Iowa law.

*Restatement (Second) of Torts* § 324 (1965). However, a finding that Huggins "took charge of" Freeman requires that he took specific action to exercise control or custody over her. *See Restatement (Second) of Torts* § 324.

The Iowa Supreme Court has addressed this issue in a similar case. In *Garofalo*, the parents of a college student sought to hold a fraternity member responsible for the alcohol-related death of their son, who was a pledge of that fraternity. 616 N.W.2d at 654–56. In *Garofalo*, the decedent drank heavily. Eventually he started to stagger, raise his voice, and stumble. *Id.* at 650–51. Later, he fell down a flight of stairs. *Id.* at 651. The fraternity member helped him up and then positioned him onto his side on a spare couch in his room to "sleep it off." *Id.* at 651. The fraternity member then left to go drinking, but returned three hours later to check on the pledge, turn him over, and adjust his pillow. *Id.* The fraternity member then went to sleep. *Id.* When he awoke the next morning, the fraternity member glanced at the pledge and then left for class. *Id.* Later that morning, the pledge was found dead, having aspirated on his own gastric contents, which he had thrown up sometime that morning. *Id.* at 650, 655. The Iowa Supreme Court concluded under these facts that the fraternity member did not "take charge" of the pledge within the meaning of *Restatement* § 324.

In this case, there is much less evidence that Huggins took control of Freeman. Busch informed Huggins that Freeman was his visitor; that she had consumed a substantial quantity of alcohol; and that after consuming it, she had thrown up and passed out. Huggins did nothing to take charge. Instead, he left Freeman's welfare to Busch; he told Busch to monitor Freeman's condition and, if her condition worsened, then to report back to him. Thus, because Huggins took no specific action to exercise control or custody over Freeman, Huggins had no legal duty to come to her aid.

Consequently, because Freeman cannot establish that Huggins had a legal duty to her under either *Restatement* § 314A or *Restatement* § 324, Freeman's claims of

negligence against Simpson College, based upon the doctrine of respondeat superior, also fail.

## 2.

Next Freeman claims that the district court erred when it granted Busch's motion for summary judgment and concluded that he did not owe Freeman a duty to summon medical assistance. However, Freeman never addressed this issue below in her response to Busch's motion for summary judgment. Instead she focused her response brief on two issues–the battery claim and the claim of negligence based upon delivery of alcohol to a minor. Rule 56 of the Federal Rules of Civil Procedure requires the non-moving party to alert the district court to the authority and facts that prohibit summary judgment. *See also* Local R. S.D. Iowa 56.1.

Freeman neither provided the trial court with authoritative precedent nor did she show the existence of a material fact. In fact, the only time that Freeman presented an argument on this issue was in a Rule 59(e) motion. We have repeatedly stated that "[a]rguments and evidence which could, and should, have been raised or presented at an earlier time in the proceedings cannot be presented in a Rule 59(e) motion." *Moysis v. DTG Datanet*, 278 F.3d 819, 829 n.3 (8th Cir. 2002) (citation omitted). Thus, because these issues were not properly raised below, we will not address them on appeal. *Schaller Tele. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 741 (8th Cir. 2002).

## B.

Finally, Freeman argues that the district court committed error when it refused her request to amend her complaint to add a claim of punitive damages. We review such a ruling for an abuse of discretion. *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999). Freeman argues that it was an abuse of discretion for the district court to deny her motion to amend because the request was made pursuant to

Federal Rule of Civil Procedure 15(a) and because it was filed seven weeks before the end of discovery. We disagree.

Freeman filed her motion ten months after the district court entered its scheduling order. "When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order." *Id.* (citation omitted). To hold otherwise would eviscerate the purpose of Rule 16(b). *Id.* The district court found that Freeman provided "no reason why punitive damages could not have earlier been alleged." Likewise, on appeal Freeman provides no good cause to explain why her motion to amend was filed so late. As a result, the district court was within its discretion to require a showing of "good cause" and to deny a motion to amend which made no attempt to show such good cause.

## III.

On cross-appeal, Busch raises two issues that merit discussion.[8] First, Busch appeals the district court's mistrial ruling. He also claims the district court erred instructing the jury.

## A.

First, Busch argues that the district court erroneously instructed the jury with an "egg-shell plaintiff" instruction. Under Iowa law, the general rule is that a defendant is only liable for the injuries he causes. *Becker v. D&E Distrib. Co.*, 247 N.W.2d 727, 730 (Iowa 1976). However, a plaintiff may also recover for a prior condition if a defendant's conduct exacerbated a pre-existing condition. *See Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 577 (Iowa 1997). This is known as the

---

[8] Busch also claims multiple evidentiary errors and argues that there was insufficient evidence to support the jury's verdict. Cr. App. Br. at 29–48. These claims are without merit, and we affirm the rulings of the district court without discussion. *See* 8th Cir. R. 47B.

"egg-shell plaintiff" rule–in essence, a defendant takes a plaintiff as he finds her. *Becker*, 247 N.W.2d at 730. However, the "egg-shell plaintiff" instruction should only be submitted if there is sufficient evidence to form a factual basis for the instruction. *Waits*, 572 N.W.2d at 577.

In this case, Freeman requested and was granted such a jury instruction. The district court's jury instructions are reviewed for an abuse of discretion. *United States v. Nguyen*, 250 F.3d 643, 645 (8th Cir. 2001); *Iowa Mutual Ins. Co. v. McCarthy*, 572 N.W.2d 537, 545 (Iowa 1997). The "egg-shell plaintiff" instruction provided that if the jury found that Freeman "had a pre-existing condition [which made] her more susceptible to injury than a person in normal health, then [Busch would be] responsible for all injuries and damages" that Freeman suffered. The instruction further provided that Busch would still be liable for these damages even if the damages suffered were greater than those experienced "by a normal person under the same circumstances."

In this case, there was sufficient evidence to form a factual basis for the instruction. Evidence was introduced at trial that Freeman had previously been molested as a child and had undergone psychological counseling. Thus, the district court did not abuse its discretion. The instruction was proper to advise the jury that Busch would be responsible for damages, despite Freeman's prior psychological condition.

## B.

Busch also argues that the district court erred when it denied his motion for mistrial, based upon Freeman's alleged violation of a pretrial order. However, we need not address the merits of this argument because it was not timely raised. As Freeman has noted in her motion to strike, Busch's statement of issues was due on July 12, 2002. However, Busch did not raise this issue until August 28, 2002–over

six weeks after it was due. As a result, he has waived his right to appeal this issue. Accordingly, we grant Freeman's motion to strike.

## IV.

Thus, for the reasons stated herein, we affirm in all respects the thorough and well-reasoned rulings of the district court and grant Freeman's motion to strike.

_____